UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD NASH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )  Case No. 4:21CV495 JCH |
| | ) |
| HENRY JAMES FOLSOM, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Henry James Folsom's Motion to Dismiss State Law Claims under Fed. R. Civ. P. 12(b)(6), filed June 8, 2021. (ECF No. 17). The motion is fully briefed and ready for disposition.

**BACKGROUND[1]**

In March, 1982, Plaintiff Donald Nash's girlfriend, Judy Spencer, was murdered outside Salem, Missouri. (Amended Compl., ¶ 15). On the night before the murder, the couple had a brief, non-violent argument outside a friend's apartment about Spencer's drinking and driving. (*Id.*). After the argument, Nash left Spencer at the friend's apartment, and returned to the home he shared with Spencer. (*Id.*). Spencer kept drinking, returned home to Nash to change clothes (during which time no violent altercation occurred), and then drove back to her friend's apartment to continue drinking. (*Id.*). She arrived at her friend's apartment safely, then departed alone to drive to bars in Houston, Missouri, a nearby town. (*Id.*, ¶ 17). Nash telephoned Spencer's friend multiple times, and expressed concern that Spencer would get into a car

---

1 The Court's background section is taken from Plaintiffs' Amended Complaint, to which Defendant Folsom has not yet filed an Answer.

- 1 -

accident or be arrested. (*Id.*, ¶¶ 15, 18). Both Nash and Spencer's friend went looking for Spencer, but neither found her. (*Id.*, ¶ 18).

Spencer's body was found the following day by two farmers at an abandoned schoolhouse outside Salem. (Amended Compl., ¶ 19). The killer had strangled Spencer with a shoelace taken from her left shoe, and then shot her in the neck with a shotgun. (*Id.*, ¶ 20). Spencer was partially nude, indicating the murder was sexually motivated, and she had a blood alcohol content of 0.18. (*Id.*, ¶ 19). Her car was found in a ditch, many miles away from the schoolhouse and in the opposite direction from Salem. (*Id.*, ¶ 23).

No eyewitness purported to connect Nash to the crime, and no physical evidence ever placed him at the abandoned schoolhouse or the ditch where Spencer's car was found. (Amended Compl., ¶ 25). Investigators administered a gunshot residue test, to see if Nash had recently handled a shotgun, but the test was negative. (*Id.*, ¶ 27).[2] Furthermore, there was no evidence that Nash's pickup (or Spencer's car) had been at the abandoned schoolhouse; instead, there were fresh tire tracks there from a different, unidentified vehicle. (*Id.*, ¶ 22). Investigators also found fingerprints on Spencer's abandoned car belonging to two men: a violent sex offender and another man who lived next to the ditch.[3] (*Id.*, ¶ 24). After some investigation, the case went cold for over twenty-five years, and between 1982 and 2008 Nash was not charged with murder. (*Id.*, ¶ 28).[4]

In 2008, at the request of Spencer's sister, the Missouri State Highway Patrol's crime laboratory tested Spencer's fingernails (which had been clipped during her autopsy) for DNA.

---

2 Nash did not own or have access to a shotgun. (Amended Compl., ¶ 20).
3 Nash's fingerprints were not found on Spencer's car. (Amended Compl., ¶ 24).
4 Investigators conceded they did not have probable cause to file charges against Nash during that period. (Amended Compl., ¶ 28).

(Amended Compl., ¶ 31).  The lab found a trace mixture of Spencer's and (allegedly) Nash's DNA.  (*Id.*).[5]  Within eight days, Nash was charged with capital murder.  (*Id.*).

Defendants Folsom, Scott Mertens, and Dorothy Taylor understood that people who live together, including those in a romantic relationship, commonly have one another's DNA under their fingernails.  (Amended Compl., ¶ 33).  As a result, they allegedly concocted a baseless and false junk science theory that, because Spencer washed her hair on the evening of her murder, any of Nash's preexisting DNA would have been washed away.  (*Id.*).  According to Plaintiffs, Folsom, Mertens and Taylor had no scientific, reliable or other proper basis for asserting that Nash's DNA would have been washed away.  (*Id.*, ¶ 37).  Folsom nevertheless personally drafted and filed a probable cause affidavit making the reckless, false and malicious assertion, in an effort to obtain an arrest warrant for Nash.  (*Id.*, ¶¶ 37, 42).  He further embellished his reports to suggest that Nash had engaged in supposedly suspicious behavior, and refused to investigate other suspects.  (*Id.*, ¶¶ 40-41, 56).  Folsom even attempted to interfere with the Dent County Sheriff's Office's separate investigation of the murder.  (*Id.*, ¶¶ 55-59).[6]

In October, 2009, Nash was convicted of capital murder.  (Amended Compl., ¶ 1).  He spent twelve years in prison until the Missouri Supreme Court, relying on a 217-page report issued by a special master, credited Nash's claim of actual innocence and set aside his conviction in July, 2020.  (*Id.*, ¶¶ 1, 73-74).  After further DNA testing on the shoelace utilized to strangle Spencer excluded Nash as a contributor, the State dismissed the charges against Nash on October 9, 2020.  (*Id.*, ¶ 76).

---

5 The total amount of the mixture was five billionths of a gram, and in 2020 the State admitted the male DNA sample was not robust enough for an expert to testify reliably that it belonged to Nash.  (Amended Compl., ¶¶ 29, 31).

6 In recommending Nash's exoneration, a special master appointed by the Supreme Court of Missouri later described the investigation as "a case of tunnel vision", in which the state "retrofit[ted] information to justify its case."  (Amended Compl., ¶ 39).

Plaintiffs filed their original Complaint in this matter against Defendants Folsom, Mertens, Taylor and Ruth Montgomery on April 28, 2021.  In their Amended Complaint, Plaintiffs assert the following federal law claims against Defendant Folsom:  42 U.S.C. §§ 1983 and 1985 claims for unlawful arrest and detention (Count I), fabrication of evidence (Count II), failure to investigate (Count III), violations of rights of access to courts (Count V), civil rights conspiracy (Count VI), and violation of the right to familial and marital associations (Count VII). They further assert Missouri state-law claims against Folsom for false arrest (Count VIII), malicious prosecution (Count IX), abuse of process (Count X), intentional infliction of emotional distress (Count XI), negligent infliction of emotional distress (Count XII), civil conspiracy (Count XIII), and loss of consortium (Count XIV).[7]

As noted above, Defendant Folsom filed the instant Motion to Dismiss on June 8, 2021, seeking dismissal of the state-law claims against him.  (ECF No. 17).

## **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted  as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim for relief is plausible on its face where "the plaintiff pleads factual content that allows the  court  to  draw  the  reasonable inference that the defendant is liable for the misconduct alleged," *id.*, and "raise[s] a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[7] Counts I-III, V-VI, and VIII-XIII are asserted by Plaintiff Donald Nash.  Counts VII and XIV are asserted by Plaintiff Terri Nash.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.* Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted).

## DISCUSSION

### A. Individual Capacity Claims

Missouri Revised Statutes § 105.711 creates a "State Legal Expense Fund" ("SLEF"), which consists of "moneys appropriated to the fund by the general assembly and moneys otherwise credited to such fund pursuant to section 105.716." *See* R.S. Mo. § 105.711.1. The statute provides that moneys in the SLEF "shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against…[a]ny officer or employee of the State of Missouri or any agency of the state…upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state." R.S. Mo. § 105.711.2(2).

In his Motion to Dismiss, Defendant Folsom asserts that § 105.711 bars Plaintiffs' state law claims against him. Specifically, Folsom points to § 105.711.5, which states in relevant part as follows:

> The state legal expense fund shall be the exclusive remedy and shall preclude any other civil actions or proceedings for money damages arising

> out of or relating to the same subject matter against the state officer or employee, or the officer's or employee's estate. No officer or employee of the state or any agency of the state shall be individually liable in his or her personal capacity for conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state.

Folsom seizes upon the above language to claim that individual capacity claims against state employees are barred as a matter of law. Plaintiffs counter that the SLEF simply affords state employees protection from personal liability for damages; it does not bar the underlying claims themselves.

In a recent opinion, the Missouri Supreme Court held that "[t]he fundamental purpose of the SLEF is to protect the covered employees from the burden and expense of civil litigation relating to the performance of their duties." *Laughlin v. Perry*, 604 S.W.3d 621, 632 (Mo. banc 2020) (internal quotation marks and citation omitted). The court continued to hold that the portion of section 105.711.5 quoted above, "reinforces the SLEF's purpose to protect state employees by limiting the circumstances in which they may be sued and held liable for conduct arising out of and in connection with their official duties." *Id.*

In *Laughlin*, the parties did not dispute that the damages already awarded the plaintiff on his claim for legal malpractice would have been paid out of the SLEF. *Id.* at 633. Instead, the dispute centered on whether the defendant public defenders were precluded from asserting official immunity.[8] In holding that official immunity was still available, the Missouri Supreme Court stated that "[a]lthough a state employee may be afforded protection from personal liability for damages under the SLEF, section 105.726.1's plain language expressly provides this protection does not preclude a state employee from asserting any and all available defenses, including

---

[8] Official immunity "protects a public official from liability if that official acts within the course of his [or her] official duties and without malice." *Laughlin*, 604 S.W.3d at 625 (internal quotation marks and citations omitted).

official immunity that could relieve a state employee of liability or prevent the suit from proceeding." *Id.* The court continued as follows:

> "Immunity" connotes not only immunity from judgment but also immunity from suit….To adopt [plaintiff's] argument (that SLEF coverage precludes a party from asserting official immunity as a defense to suit) is to fail to acknowledge protection from personal liability for a judgment differs significantly from a suit being initiated. Protection from personal liability still subjects a [defendant] to all of the burdens of litigation—from discovery to trial—which can be complex, time-consuming, and serve as a distraction from an overwhelming caseload. Consequently, if these cases were permitted to go to trial, the benefits of immunity from suit would be lost even if, ultimately, the [defendants] were not liable personally for any costs or judgments that resulted.

*Id.* (citations omitted). The court thus concluded the defendant public defenders were entitled to assert official immunity as a defense to the plaintiff's suit.

Upon consideration of the foregoing, the Court agrees with Plaintiffs that the SLEF is merely a voluntary assumption of legal and monetary obligations that affords state employees protection from personal liability for damages; it does not bar the underlying claims themselves. To receive such immunity from suit, Defendant Folsom would have to invoke the defense of official immunity, which he has not done. *See Cottey v. Schmitter*, 24 S.W.3d 126, 130 n. 2 (Mo. App. 2000).[9] This portion of Defendant's Motion to Dismiss will therefore be denied.

### B. Punitive Damages

Defendant Folsom next asserts the SLEF precludes Plaintiffs' claim for punitive damages. In support, Folsom again points to § 105.711.5, which states in relevant part as follows:

---

9 Plaintiffs maintain Folsom cannot invoke official immunity because, as noted above, said doctrine only protects public officials if they did not act with malice. *See Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (internal quotation marks and citations omitted) ("[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice."). Plaintiffs here assert that Folsom acted with malice.

> In the case of any claim or judgment against an officer or employee of the state or any agency of the state based upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state that would give rise to a cause of action under section 537.600, the state legal expense fund shall be liable, excluding punitive damages, for:
>
> (1) Economic damages to any one claimant; and
> (2) Up to three hundred fifty thousand dollars for noneconomic damages.

In response, Plaintiffs assert the SLEF specifically provides that its funds shall be available for payment of *any* claim or *any* amount. They maintain the cited provision imposes a cap on payments (and a bar of punitive damages) only for certain narrow categories of claim, none of which are at issue here.

Upon consideration, the Court holds Plaintiffs are entitled to pursue their claim for punitive damages against Folsom. The Court agrees with Plaintiffs that the relevant portion of the cited statute is its reference to claims giving rise to a cause of action under section 537.600. Section 537.600 in turn codifies the State's sovereign or governmental tort immunity, expressly waiving said immunity only for claims involving "[i]njuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment," or "[i]njuries caused by the condition of a public entity's property…" *See Id.* Section 105.711.5's limitation on damages thus applies only to those types of claims, leaving intact a plaintiff's ability to seek additional damages (including punitive) for other types of claims. This portion of Defendant's Motion to Dismiss will therefore be denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Folsom's Motion to Dismiss State Law Claims under Fed. R. Civ. P. 12(b)(6) (ECF No. 17) is **DENIED**.

Dated this ___18th___ Day of October, 2021.

\s\  Jean C. Hamilton
UNITED STATES DISTRICT JUDGE