UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD NASH, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 4:21CV00495JCH |
| v. ) | |
| ) | |
| HENRY JAMES FOLSOM, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT FOLSOM'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1. **Introduction**

The inflammatory rhetoric of the Amended Complaint crumbles under the weight of the undisputed evidence. Plaintiff Donald Nash was convicted of first degree murder for the 1982 death of his former girlfriend, Judy Spencer. In 2008, Nash's DNA was found under Spencer's fingernails, and he was convicted in 2009. In habeas proceedings, the Missouri Supreme Court vacated Nash's conviction in 2020. The Court did ***not*** find that Nash was actually innocent. Instead, the Court held that certain expert trial testimony regarding the effects of water on DNA under fingernails required that Nash's conviction be vacated. The claims in this lawsuit are based on Nash's arrest, not his conviction, and probable cause for an arrest is a lower standard than evidence required for a conviction.

1

Because prosecutorial immunity precludes Nash from bringing any claims against the prosecutors in his case, Nash instead brings federal and Missouri state law claims against Defendants Folsom, Mertens, Montgomery, and Taylor, who were Missouri State Highway Patrol employees involved with his investigation and arrest. Though Nash's conviction could not stand, the probable cause for his arrest was more than adequate and, in any event, no clearly established constitutional right was violated. Further, the decisions made by Folsom and others were clearly discretionary and there is no evidence intentional misconduct. Qualified immunity thus bars the federal claims against Folsom, and official immunity bars the state law claims against him. This Court should accordingly grant Folsom's Motion for Summary Judgment.

## 2. Factual Background

Folsom incorporates his Statement of Uncontroverted Material Facts into his Motion for Summary Judgment and into this Memorandum.

Judy Spencer was murdered in March 1982. SOF ¶ 1. Nash lived with Spencer at the time of her murder. SOF ¶ 2. The Missouri State Highway Patrol investigation revealed that Nash had been arguing with Spencer the night of her murder, telling her "[t]hat will be the last time you lie to me bitch." SOF ¶¶ 3-5. Following this argument, Spencer went to the home she shared with Nash, changed clothes, returned to a friend's apartment, and

2

washed and restyled her hair. SOF ¶¶ 6-7. Nash went out looking for Spencer the night of the murder. SOF ¶ 11.

Further investigation revealed that Nash was seeing another woman at the time he was living with Spencer and moved in with this woman 20 days later, and her daughter told investigators that Nash molested her for an extended period of time while he lived with her mother. SOF ¶¶ 13, 17. On the night of the murder, Nash told this woman that he had been out looking for Spencer and planned to go out again looking for her again. SOF ¶14. Nash denied any romantic relationship with the woman he moved in with following Spencer's murder though he married her five months later. SOF ¶¶ 13, 15.

In November 2007, items of evidence from the Spencer murder were submitted to the Missouri State Highway Patrol crime lab for forensic examination. SOF ¶ 19. Nash's DNA profile was found under fingernails taken from the left hand of Spencer, at least one of which had been broken in a struggle. SOF ¶¶ 19-20. Nash had no explanation for the presence of his DNA under Spencer's fingernails and appeared visibly shaken; he looked down and avoided eye contact when denying that he killed her. SOF ¶ 21.

The probable cause affidavit prepared by Folsom stated that Spencer's DNA could not have remained present after her hair washing the night of her murder, and that it did not come from casual contact. SOF ¶ 22. Montgomery, an MSHP crime lab employee, had spoken with Folsom prior to his

3

preparation of the probable cause affidavit. SOF ¶ 23. At trial, Montgomery testified that the quantity of DNA under Spencer's fingernails was not consistent with casual contact, and that she would expect hair washing to remove DNA underneath the fingernails. SOF ¶ 24-25. She acknowledged on cross examination that she could not state that all DNA would be removed by hair washing, and that it would be more likely to remove DNA from the surface of the hands than from under the fingernails. SOF ¶ 25. Montgomery was further asked whether Spencer had used shampoo, whether the shampoo was soap or detergent based, and whether Spencer had digitally penetrated Nash prior to the murder (a potential source of DNA in the quantity found under Spencer's fingernails). SOF ¶26.

After Nash was convicted of first degree murder, post-conviction proceedings were primarily directed to the DNA evidence. During a deposition, Montgomery testified that her opinion regarding the effect of hair washing had changed from it having a "great effect" to having "some effect." SOF ¶ 28. The basis for this change was a 2012 study entitled "Prevalence and Persistence of Foreign DNA Beneath Fingernails." SOF ¶ 29. Though her opinion on the effect of hair washing changed, her opinion remained that the quantity of Nash's DNA under Spencer's fingernails did not come from casual contact but rather from an exchange of bodily fluids, a violent exchange, or Spencer's fingers going into Nash's mouth or other orifices. SOF ¶ 30.

4

According to Nash in 1982, the last time he and Spencer had any sexual contact was two days prior to the murder. SOF ¶ 31.

In 2020, the Missouri Supreme Court vacated Nash's conviction based on the change in Montgomery's opinion regarding the DNA evidence. It did not declare Nash to be actually innocent of the murder. Nash and his wife Teresa Nash assert the following claims against Defendant Folsom:

- § 1983 Claim for Unlawful Arrest and Detention (Count I)

- § 1983 Claim for Fabrication of Evidence (Count II)

- § 1983 Claim for Failure to Investigate (Count III)

- § 1983 Claim for Violation of Rights of Access to Courts (Count V)

- § 1985 Claim for Civil Rights Conspiracy (Count VI)

- § 1983 Claim of Terri Nash for Violation of Right to Familial and Marital Associations (Count VII)

- Missouri State Law Claim for False Arrest (Count VIII)

- Missouri State Law Claim for Malicious Prosecution (Count IX)

- Missouri State Law Claim for Abuse of Process (Count X)

- Missouri State Law Claim for Intentional Infliction of Emotional Distress (Count XI)

- Missouri State Law Claim for Negligent Infliction of Emotional Distress (Count XII)

- Missouri State Law Claim for Civil Conspiracy (Count XIII)

- Missouri State Law Claim of Terri Nash for Loss of Consortium (Count XIV)

5

No material facts regarding these claims are controverted, and Folsom is entitled to judgment as a matter of law.

3. **Argument**

   A. **Probable Cause Existed to Arrest Nash, and Qualified Immunity Bars the Federal Claims (Counts I-III and V-VII).**

Plaintiffs' federal and state claims against Folsom have their primary basis in the Fourth Amendment's probable cause requirement in that they depend on whether there was probable cause to arrest Nash. Plaintiffs contend that Folsom knowingly made false statements in the probable cause affidavit. In order to prove these claims, Plaintiff's must show that (1) Folsom deliberately or recklessly made a false statement in the probable cause affidavit or omitted a truthful statement, and (2) probable cause would not exist absent the false statement or if the omitted statement had been included. *See Brittingham v. Gove-Ortmeyer*, 174 F. Supp.3d 1043, 1049 (E.D. Mo. 2016) (citin *Dowell v. Lincoln Cty., Mo.*, 762 F.3d 770, 777 (8th Cir. 2014)). Folsom, however, is entitled to qualified immunity on the federal claims if he had a mistaken but objectively reasonable belief that Nash committed the offense. *Dowell*, 762 F.3d at 777.

Probable cause exists when "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . .an offense." *Hannah v. City of*

6

*Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986). "'Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act.'" *Garang v. City of Ames*, 2 F.4th 1115, 1121 (8th Cir. 2021) (quoting *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020)). Probable cause is determined at the moment an arrest is made, not by later-developed facts. *Id.* (reversing trial court's denial of summary judgment based on qualified immunity).

There was more than sufficient probable cause for Nash's arrest. Nash's DNA had been found under Spencer's fingernails in a quantity too great to come from casual contact.[1] Spencer's fingernails were broken from a struggle yet no other DNA was identified other than Nash's. Nash had argued with Spencer the night of the murder, threatened her, and had been out alone looking for her. He was living with another woman shortly after the murder and allegedly molesting that woman's daughter. He falsely denied any romantic relationship with that woman in a tape-recorded conversation but then married her five months later. Nash had no explanation for how his DNA got under Spencer's fingernails and appeared evasive when denying

---

[1] Plaintiff's DNA "expert," who was unaware of basic principles such as whether DNA degrades over time, conspicuously avoided learning the quantity of DNA found under Spencer's fingernails and thus had no opinions on how it could have gotten there— a body fluid exchange, a violent exchange, or fingers going in the mouth or other orifices—not from casual daily contact. *See* SOF ¶ 30.

7

that he murdered her. While these factors may not have been sufficient evidence for his conviction to stand, they provided adequate probable cause for his arrest. *See U.S. v. Webster*, 625 F.3d 439, 442 (8th Cir. 2010) (probable cause does not require enough evidence to justify a conviction); *see also Brinegar v. U.S.,* 338 U.S. 160, 173 (1949) ("large difference between" probable cause and evidence required for conviction); *U.S. v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013) ("Arresting officers are not required to . . . have collected enough evidence so as to justify a conviction[.]"); *Barieau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (Probable cause requires only "reasonable ground for belief of guilt[,]" which means more than mere suspicion but less than evidence required for conviction.)[2]

And even if probable cause had been lacking, qualified immunity bars the claims against Folsom. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects

---

[2] While the other murder suspects identified in the Amended Complaint—Heyer and Feldman—make for interesting reading and may have media appeal, neither is viable. Heyer's wife accounted for his whereabouts, and it is implausible that he would have conspicuously left his wife's company to go commit a murder and she would lie about it to police, especially since he left her for another woman. And evidence indicated that Spencer patronized the full service gas station where Feldman worked shortly before her murder, which is likely how his fingerprint got on her car. No evidence exists that he otherwise knew her or encountered her that night. In any event, any evidence relating to Heyer and Feldman is a red herring and immaterial for summary judgment purposes.

8

all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Folsom is not a DNA expert. He was relying on information he received from the crime lab. As a non-expert, he cannot be expected to have known the ins and outs of the effects of hair washing on DNA evidence and what the scientific research at the time said on that subject. Despite the conclusory allegations of malice and bad faith in the Amended Complaint, there is no evidence supporting them, and the factors providing probable cause also refute any notion of malice or bad faith. This Court should enter summary judgment on the federal claims against Folsom. *See Just v. City of St. Louis*, 7 F.4th 761 (8th Cir. 2021) (reversing trial court's denial of summary judgment based on qualified immunity). There is no material dispute that the effects of hair washing on DNA were not clearly established and would not have been apparent to a non-expert like Folsom. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (right is clearly established only when a reasonable official would know that what he or she was doing violates that right; the unlawfulness must be "apparent" under pre-existing law).

### B. Folsom's Decisions Were Discretionary, and Thus Official Immunity Bars the State Law Claims (Counts VIII-XIV).

State officials, such as Folsom are immune from tort liability for their discretionary decisions. An exception to official immunity exists for

9

ministerial acts, but the Missouri Supreme Court made clear in *State ex rel. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019), that this exception is a narrow one. "Absent allegations averring the existence of a statutory or departmentally-mandated duty and a breach of that duty, a petition fails to state a claim that is not barred by the doctrine of official immunity as a matter of law." *Boever v. Special School Dist. of St. Louis County*, 296 S.W.3d 487, 492 (Mo. Ct. App. E.D. 2009); *see also State ex. Rel Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. 1986) (unless a state official violated "either a statutory or departmentally-mandated duty," a petition's pleadings "are insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law[]").

An act is discretionary if it requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Rustici v. Weidemeyer*, 673 S.W.2d 762, 769 (Mo. 1984). Decisions on whether probable cause exists for an arrest and what to include in a probable cause affidavit are inherently discretionary. Official immunity thus bars any state tort claims against Folsom, and summary judgment should enter on the state law claims against him.

### 4. Conclusion

Probable cause existed to arrest Nash, and qualified immunity bars the federal claims based on Nash's arrest. Furthermore, whether probable cause exists and what to include in a probable cause affidavit are inherently discretionary decisions, and thus official immunity bars the state law claims. Summary judgment should therefore enter in favor of Folsom on counts I-III and V-XIV.

Respectfully submitted,

**ERIC SCHMITT**
Attorney General

*/s/J. Patrick Sullivan*
J. Patrick Sullivan, #42968
Assistant Attorney General
615 East 13th Street, Ste. 401
Kansas City, Missouri  64106
(816) 889-5019 (Telephone)
*Attorneys for Defendant Folsom*

**CERTIFICATE OF SERVICE**

I hereby certify that on this __th day of May, 2022, the foregoing was sent electronically to all counsel of record.

*/s/ J. Patrick Sullivan*
J. Patrick Sullivan
Assistant Attorney General