# United States Court of Appeals
### *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
www.ca8.uscourts.gov

February 09, 2024

Samuel Charles Freedlund
ATTORNEY GENERAL'S OFFICE
Suite 200
815 Olive Street
Saint Louis, MO  63101

  RE:  22-2860  The Estate of Donald Nash, et al v. Henry Folsom, et al

Dear Counsel:

  The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

  Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                Michael E. Gans
                Clerk of Court

DNS

Enclosure(s)

cc: Clerk, U.S. District Court, Eastern District of Missouri
   Jonathan Barton Potts
   James J. Simeri
   Stephen Robert Snodgrass
   J. Patrick Sullivan
   Charles Andrew Weiss

  District Court/Agency Case Number(s):   4:21-cv-00495-JCH

# United States Court of Appeals
## For The Eighth Circuit

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

February 09, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:   22-2860  The Estate of Donald Nash, et al v. Henry Folsom, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was former AAG, Jeff P. Johnson of Clayton, MO. Counsel who appeared on the brief was former AAG, Michael E. Talent of St. Louis, MO.

Counsel who presented argument on behalf of the appellee was Jonathan Barton Potts, of Saint Louis, MO. The following attorneys appeared on the brief were Jonathan B. Potts, Charles A. Weiss, and Stephen R. Snodgrass of St. Louis, MO.

The judge who heard the case in the district court was Honorable Jean C. Hamilton.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

DNS

Enclosure(s)

cc:   MO Lawyers Weekly

District Court/Agency Case Number(s):   4:21-cv-00495-JCH

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2860
_____

The Estate of Donald Nash, Theresa Nash as personal representative; Theresa Nash

*Plaintiffs - Appellees*

v.

Henry James Folsom; Scott Mertens; Ruth Montgomery; Dorothy Taylor

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 21, 2023
Filed: February 9, 2024
_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

    Several Missouri public officials filed this interlocutory appeal from a district court judgment denying qualified immunity on five claims flowing from a murder prosecution. For the reasons explained below, we affirm in part, reverse in part, and dismiss in part for want of jurisdiction.

I. *Background*

In March 1982, the partially nude body of Judy Spencer was found at an abandoned schoolhouse outside of Salem, Missouri. The killer strangled Spencer with a shoelace taken from her shoe and then shot her with a shotgun. Forensic testing showed that she had a blood alcohol content of 0.18 percent. Fresh tire tracks were found at the scene. The tracks were too wide to belong to vehicles owned by Spencer or her live-in boyfriend—Donald Nash. Police later discovered Spencer's vehicle in a ditch, miles away from the schoolhouse. Fingerprints found on the front-side windows of the vehicle identified two men: one was a violent sex offender, and the other lived next to the ditch.

The night before Spencer's body was discovered, she and Nash argued about her drinking and driving. The confrontation occurred outside the apartment of Spencer's friend, Janet Jones. After the argument, Nash left Spencer at Jones's apartment and returned to their home. Spencer eventually returned home, changed clothes, and then drove back to Jones's apartment. At some point that evening, Spencer washed her hair in Jones's kitchen sink. The parties agree Spencer washed her hair there but dispute when the washing occurred. Nash asserts Spencer washed her hair before she went home to change clothes. Defendants argue Spencer washed her hair after she changed her clothes and returned to Jones's apartment.

Spencer continued drinking after returning to Jones's apartment, and she later drove by herself to bars in nearby Houston, Missouri. Nash telephoned Jones multiple times, worried that Spencer's drinking and driving would lead to an accident or arrest. Nash and Jones split up and spent the night looking for Spencer, but neither found her.

No direct evidence connected Nash to Spencer's murder, the crime scene, or the ditch where police found Spencer's vehicle. A gunshot residue test conducted on Nash soon after the discovery of Spencer's body did not find residue. Also, Nash did not own a shotgun at the time of Spencer's death. Investigators further observed that Nash had no scratches, scrapes, marks, or bruises on his face or hands that would

-2-

suggest his involvement in a violent struggle. Unfortunately, the case went cold for over 25 years.

In 2007, Spencer's sister contacted the Missouri State Highway Patrol requesting that they reopen the investigation. Thereafter, defendants Henry James Folsom, Scott Mertens, and Dorthy Taylor (officers) reopened the investigation. Folsom pulled the highway patrol's case file, which included the findings of the initial 1982 investigation. In November 2007, the officers submitted clippings of Spencer's fingernails, one of which was broken, to the Missouri State Highway Patrol crime lab for forensic examination. The lab found a mixture of an unidentified male's DNA and Spencer's DNA under her fingernails. Nash voluntarily provided a DNA sample, and upon analysis, defendant Ruth Montgomery—a crime lab employee—concluded that the male DNA belonged to Nash.

During the investigation, defendant Taylor suggested that when Spencer washed her hair, she might have affected the DNA under her fingernails. This suggestion became known as the "hair washing theory." Folsom called Montgomery and asked whether hair washing would remove DNA from underneath Spencer's fingernails. According to Folsom, Montgomery said hair washing would remove Nash's DNA from under Spencer's fingernails.

Based on the hair washing theory, Folsom prepared a probable cause affidavit. The affidavit stated that "a mixture of Judy Spencer's DNA and [Donald] Nash's DNA was found under the left hand fingernails of Judy Spencer and this DNA could not have remained present during hair washing . . . . This mixture of DNA is often normally the result of a physical struggle." R. Doc. 51-1, at 2. Folsom testified that before he wrote the affidavit, he talked with Montgomery because he wanted to accurately state her words. Folsom, Taylor, and Mertens interviewed no other suspects, including the violent sex offender and the man who resided near the ditch where police found Spencer's vehicle.

-3-

Nash was eventually charged with Spencer's murder. In October 2009, a jury convicted Nash of capital murder, and he spent the next 11 years in prison. In July 2020, the Missouri Supreme Court set aside his conviction. In October 2020, the State of Missouri dismissed the charges because DNA testing on the shoelace used to strangle Spencer supported Nash's noninvolvement.

Nash and his wife filed suit against Folsom, Mertens, Taylor, and Montgomery in 2021.[1] The Nashes asserted, *inter alia*, 42 U.S.C. § 1983 claims for unlawful arrest and detention against the officers (Count I), fabrication of evidence against the officers and Montgomery (collectively, "defendants") (Count II), failure to investigate against the officers (Count III), violations of rights of access to courts against the defendants (Count V), and violation of the right to familial and marital associations against the defendants (Count VII).

The defendants filed summary judgment motions seeking dismissal based on qualified immunity. The district court denied their motions in a single judgment. The defendants appeal the denial of qualified immunity on Counts I, II, III, V, and VII.

The defendants make two arguments on appeal. First, they argue that they did not violate Nash's Fourth Amendment rights because (1) they did not deliberately or recklessly include a false statement in their probable cause affidavit, and (2) a properly reconstructed affidavit—including omitted information—would have established probable cause. Second, they contend that if qualified immunity is granted on Count I, it also entitles them to qualified immunity on Counts II, III, V, and VII.

## II. *Discussion*

When addressing an interlocutory appeal, we first determine whether we have jurisdiction.

---

[1]Donald Nash passed away on January 28, 2023, and pursuant to Federal Rule of Civil Procedure 25(a), Theresa Nash filed an unopposed motion to become the personal representative of his estate.

> Ordinarily, we lack jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision. We do, however, have limited authority to review the denial of qualified immunity through an interlocutory appeal under the collateral order doctrine. Our jurisdiction to review the denial of qualified immunity extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial. Thus, a defendant entitled to invoke a qualified immunity defense may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial. And we typically may not consider any other grounds for granting summary judgment on the merits of the case at this interlocutory stage.

*Clinton v. Garrett*, 49 F.4th 1132, 1138 (8th Cir. 2022) (quoting *Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010)).

We review de novo the district court's denial of defendants' motions for summary judgment based on qualified immunity. *Id.* "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a qualified-immunity defense, "[f]irst, a court must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 232 (internal quotation marks and citation omitted). "Courts have discretion to decide the order in which to" address each prong of the qualified-immunity analysis. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

Government actors may violate the Fourth Amendment by including false information in, or omitting truthful information from, a probable cause affidavit, and such action constitutes a *Franks*[2] violation. *See United States v. Reivich*, 793 F.2d

---

[2] *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978).

-5-

957, 960 (8th Cir. 1986) ("A facially sufficient affidavit, however, may be challenged on the ground that it includes deliberate or reckless falsehoods, and this rule has been extended to allow challenges to affidavits based on alleged deliberate omissions." (citation omitted)); *United States v. Jacobs*, 986 F.2d 1231, 1233–34 (8th Cir. 1993) (explaining that we have extended *Franks*'s "rationale to cover material that has been deliberately or recklessly omitted from a search-warrant affidavit"); *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) ("In *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing.").

Including a false statement in a warrant affidavit is a *Franks* violation when the defendant establishes by a preponderance of the evidence that (1) the affiant "knowingly and intentionally, or with reckless disregard for the truth," includes a false statement in a warrant affidavit, and (2) the false statement was "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56.

Omitting information violates *Franks* when "1) . . . facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) . . . the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Williams v. City of Alexander*, 772 F.3d 1307, 1312 (8th Cir. 2014) (internal quotation marks omitted); *see also Reivich*, 793 F.2d at 960.

An innocent mistake or negligence "will not suffice to demonstrate reckless or deliberate falsehood." *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010). "Recklessness . . . may be inferred from the fact of omission of information from an affidavit when the material omitted would have been *clearly critical* to the finding of probable cause." *Id.* (emphasis added) (cleaned up). Whether the omitted information is "clearly critical" requires reconstructing the probable cause affidavit with the omissions and determining whether an issuing court would find the omitted

information "clearly critical" to the probable cause analysis. *See, e.g.*, *Hunter v. Namanny*, 219 F.3d 825, 829–30 (8th Cir. 2000) (explaining that a reconstructed affidavit contained information clearly critical to a probable cause determination); *see also Jacobs*, 986 F.2d at 1235 (showing that the magistrate judge would not have granted a warrant based on the reconstructed affidavit); *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005) (noting that even if the officer acted recklessly the omitted information did not undermine probable cause and, therefore, was not clearly critical); *Block v. Dupic*, 758 F.3d 1062, 1064–65 (8th Cir. 2014) (highlighting a reconstructed affidavit with omitted facts that were not clearly critical).

When defending against such claims "public officials are permitted to claim on appeal that their actions were objectively reasonable in light of their knowledge at the time of the incident." *Mueller v. Tinkham*, 162 F.3d 999, 1002 (8th Cir. 1998). "We review the district court's factual findings on a *Franks* challenge for clear error and its legal determination of probable cause *de novo.*" *Mashek*, 606 F.3d at 929.

A. *Count I*

The officers appeal the district court's decision that they are not entitled to qualified immunity on Count I. The district court determined that a trier of fact must decide whether the inclusion of the hair washing theory in the probable cause affidavit constituted recklessness. The court then determined based on evidence omitted from the affidavit that "viewed in the light most favorable to [the Nashes], the facts show a violation of a constitutional or statutory right . . . ." R. Doc. 73, at 16. The court then held that the right was clearly established and proceeded to deny the officers qualified immunity on Count I. The officers argue that they did not violate Nash's Fourth Amendment right by (1) including the hair washing theory, or (2) omitting clearly critical evidence from the probable cause affidavit. We address each argument in turn.

-7-

1. *The Hair Washing Theory*

Was the hair washing theory a false statement? To decide this issue, we must have jurisdiction. Because this is a disputed fact question, we decline jurisdiction.

In qualified-immunity cases, when the district court determines that disputed facts remain for a trier of fact to decide, we lack jurisdiction to address the denial of qualified immunity in an interlocutory appeal. *See, e.g.*, *Graham v. St. Louis Metro. Police Dep't*, 933 F.3d 1007, 1009 (8th Cir. 2019) ("Because [the officer's] arguments all rest on his contention that the district court erred in its determination that a genuine dispute of material fact exists as to whether Graham was incapacitated when he tased Graham a second time, we lack jurisdiction over this appeal."); *Taylor v. St. Louis Cmty. Coll.*, 2 F.4th 1124, 1127 (8th Cir. 2021) ("[F]or us to reach [defendant's] 'legal argument' that he responded reasonably and did not violate clearly established law, we would have to exceed our jurisdiction and cast aside the district court's factual findings, analyze the factual record, and resolve genuine factual disputes against the non-moving party. This we cannot do.").

The hair washing theory must be reserved for trial because we do not have jurisdiction to address it. In the district court's order denying the defendants' summary judgment motions, it found "that whether or not including the [hair washing] statements constituted recklessness is a genuine issue of material fact that precludes determination as a matter of law that probable cause existed." *Nash v. Folsom*, No. 4:21-cv-495-JCH, 2022 WL 3585606, at *7 (E.D. Mo. Aug. 22, 2022). Therefore, if we addressed whether including the hair washing theory in the probable cause affidavit violated Nash's Fourth Amendment right, we would be deciding "a genuine issue of material fact." Analyzing this issue requires us to investigate and solve a fact question that the district court left to the trier of fact. We lack that authority.

-8-

## 2. *Omission of Exculpatory Evidence*
### a. *Jurisdiction*

As previously stated, a *Franks* violation may occur when "[a] law enforcement official deliberately or recklessly include[s] a false statement, or omit[s] a truthful statement from his warrant affidavit." *Mashek*, 606 F.3d at 928 (internal quotation marks omitted). To prevail on this issue, the Nashes "must show that the affidavit would not establish probable cause if . . . the omitted information is supplemented." *Id.* "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed an offense." *Howe v. Gilpin*, 65 F.4th 975, 980 (8th Cir. 2023) (internal quotation marks omitted).

Do we have jurisdiction to determine if there was a *Franks* violation based on omitted information? *See Williams*, 772 F.3d at 1311–12 (conducting a false-statement analysis and then an omission analysis). Unlike the false statement issue, the district court did not find a genuine dispute of material fact surrounding the information omitted from the probable cause affidavit, and neither party contends that there is such a dispute.[3] Upon reviewing the record, we discern no dispute regarding the facts omitted from the affidavit. The question of "[w]hether probable cause existed . . . is an objective question of law." *Bowden v. Meinberg*, 807 F.3d 877, 881 (8th Cir. 2015). We have jurisdiction to decide this legal question.

### b. *Constitutional Violation*

Nash contends five critical facts were left out of the probable cause affidavit. Those facts are that (1) Nash did not own a shotgun, (2) a gunshot residue test administered to him a few hours after the murder was negative, (3) there were no markings on his body indicating that he had been in a struggle, (4) tire tracks at the abandoned schoolhouse where Spencer's body was found did not match his or

---

[3]The officers only argue that the district court erred because it denied summary judgment without finding the omitted facts "clearly critical" to the probable cause determination. We review de novo whether undisputed facts are clearly critical. *See Jacobs*, 986 F.2d at 1235.

-9-

Spencer's vehicle, and (5) Spencer's vehicle had fingerprints belonging to two other men while Nash's fingerprints were not present.

The district court determined that once the omitted facts were included in the reconstructed affidavit, the affidavit no longer supported probable cause. The court concluded that the inculpatory evidence was "largely cancelled by evidence of [Nash's] innocence." *Nash*, 2022 WL 3585606, at *9. The district court specifically noted that Nash did not own or fire a shotgun at the time of Spencer's death, his vehicle's tire tracks did not match the ones found at the scene, Nash's fight with Spencer was verbal and not physical, and the fingerprints on Spencer's vehicle indicated that two other men may have been involved in the crime. Inserting the omitted facts into the affidavit, the court was "unable to say as a matter of law that probable cause existed such that [the officers] did not violate Nash's Fourth Amendment rights." *Id.* The district court did not clearly err in using these facts in the reconstructed probable cause affidavit.

In reconstructing the officers' probable cause affidavit for de novo review, we keep the statement about the hair washing theory but include the omitted facts from the 1982 investigation. Such an affidavit says that Spencer and Nash engaged in a verbal argument before he left in his vehicle and that sometime later Spencer went to the residence she shared with Nash to change clothes. She then returned to Jones's residence and—either before or after going to her shared residence with Nash—she washed and restyled her hair. Then, she drove her vehicle from Jones's apartment to a nearby city to drink. Nash said that he searched for Spencer until about 9:30 p.m., but witnesses said he was gone until about 12:30 a.m. The next day, Spencer's body was found partially nude near an abandoned schoolhouse, along with some of her clothing. Spencer was strangled with a shoelace and shot with a shotgun. Nash, however, did not own a shotgun and failed a gunshot residue test administered a few hours after her murder. Police discovered a set of fresh tire tracks at the murder scene, but they did not match Nash's or Spencer's vehicle. When investigators discovered Spencer's vehicle, they found the fingerprints of two unidentified men but not Nash's. Forensic analysis showed a mixture of Nash's and Spencer's DNA

-10-

under Spencer's fingernails, one of which was jagged. Such DNA could not have remained during hair washing, could not be transferred via casual contact, and is indicative of a physical struggle. But when examined by officers a few hours after the murder, Nash did not have any markings of being in a physical struggle.

The reconstructed probable cause affidavit, even when the hair washing theory is included, does not enable a reasonably prudent person to conclude that Nash murdered Spencer. The evidence indicates that Spencer fought her attacker, tearing her fingernail. Her fingernails contained a mixture of her and Nash's DNA, which gave rise to the hair washing theory. But Nash did not show any signs of a physical altercation when examined by investigators shortly after they discovered Spencer. Moreover, Nash's fingerprints were not on Spencer's vehicle, but two sets of fingerprints from other men were present. One man was a violent sex offender, and the other man resided near the ditch where Spencer's vehicle was discovered. Finally, neither Spencer's nor Nash's vehicle could have made the fresh tire tracks at the scene, suggesting that someone else's vehicle transported Spencer to the abandoned schoolhouse. When the omitted facts are added to the affidavit, they negate probable cause.

Because these omitted facts "would have been clearly critical to the probable cause determination, recklessness may be inferred." *Hunter*, 219 F.3d at 830.

Thus, we find no error in the district court's holding that a reasonable juror could conclude that the reconstructed affidavit does not support probable cause. *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999) ("Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party.").

c. *Clearly Established*

"Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thurmond v. Andrews*, 972 F.3d

-11-

1007, 1011 (8th Cir. 2020) (internal quotation marks omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 1012 (internal quotation marks omitted). Clearly established law is not defined "at a high level of generality"; instead "we look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted). We can answer the legal question of whether it was a clearly established constitutional violation in 2008 for a law enforcement officer to omit truthful exculpatory information from a probable cause affidavit. *See Wright v. United States*, 813 F.3d 689, 695–96 (8th Cir. 2015).

Our cases show that omitting truthful evidence from a probable cause affidavit violated a clearly established constitutional right in 2008, placing the constitutional question beyond debate. *See, e.g.*, *Reivich*, 793 F.2d at 960 ("A facially sufficient affidavit, however, may be challenged on the ground that it includes deliberate or reckless falsehoods, and this rule has been extended to allow challenges to affidavits based on alleged deliberate omissions." (citation omitted)); *Turpin v. Cnty. of Rock*, 262 F.3d 779, 783 (8th Cir. 2001) ("The law was clearly established at the time in question in this case that an affidavit for a search warrant containing materially false statements or omissions knowingly or recklessly made in conscious disregard for the truth violates the Fourth Amendment." (citing *Franks*, 438 U.S. at 171–72)); *Hunter*, 219 F.3d at 829–31 (holding that a witness's statement that she did not receive cocaine from the suspect was clearly critical and that, absent the omission of that statement, a court would not have found the affidavit sufficient for probable cause).

*Jacobs*, a 1993 case involving a similar fact pattern to Nash's case, held that omitting exculpatory information from a probable cause affidavit clearly violated the Fourth Amendment. 986 F.2d at 1235. In that case, an officer included in his probable cause affidavit that a search dog showed "interest" in a package suspected of containing drugs, but the officer omitted the fact that the dog did not "alert" to the package. *Id.* at 1234–35. We found "the warrant deficient under *Franks*," noting that

the "information should have alerted the officers that they lacked probable cause to examine the package." *Id.* at 1235. We were "confident that if the magistrate judge had been aware of the full scope of the investigation, the application for a warrant would not have been granted." *Id.*

The Nashes' case is stronger than that presented in *Jacobs*. Like *Jacobs*, the omitted facts should have alerted the officers that they lacked probable cause for Nash's warrant. Given the quantity and gravity of information omitted from the affidavit, a reasonable officer would have understood that omitting this truthful information violated Nash's constitutional right. Thus, like *Jacobs*, the magistrate examining the affidavit would not have granted a warrant if aware of the investigation's full scope. In *Jacobs*, we found the warrant deficient because one clearly critical fact was omitted; here, the officers omitted five.

The defendants argue that our decision in *Hartman v. Bowles* shows that their behavior did not violate a clearly established constitutional right. 39 F.4th 544 (8th Cir. 2022) (per curiam). We disagree. In *Hartman*, a detective submitted a warrant application to arrest two white men that he believed were involved in the shooting of a fire captain. *Id.* at 545. But the warrant application omitted a fact unbeknownst to the detective—the fire captain described his assailant as a black male. *Id.* We held that the detective was entitled to qualified immunity because—although his probable cause affidavit omitted critical information—he did not know that the information existed. *Id.* For *Hartman* to apply, the officers must not have known the information from the 1982 investigation when they submitted the probable cause affidavit. But the officers did know about the 1982 investigation, making *Hartman* distinguishable.

The district court did not err in denying qualified immunity for Count I.

B. *Qualified Immunity on Counts II, III, V, and VII*

The Nashes assert that the defendants forfeited their right to appeal the denial of qualified immunity on these counts because they did not adequately brief the issue before the district court. We reject this argument. The first point heading in the

-13-

defendants' memorandums supporting their summary judgment motions reads "Qualified Immunity Bars the Federal Claims (Counts I–III and V–VII)." R. Doc. 50, at 6; R. Doc. 53, at 6. The defendants' memorandums sufficiently argue that qualified immunity bars these counts. *See, e.g.*, *Ferguson v. Short*, 840 F.3d 508, 511 (8th Cir. 2016) ("[Plaintiff] asks us simply to dismiss this appeal, arguing that the detectives failed to raise and preserve the qualified-immunity issue in the district court . . . . We are unwilling to go that far. References to qualified immunity are peppered throughout the detectives' suggestions in support of their motion for summary judgment.").

As to Counts II, III, V, and VII, we will first address whether, in 2008, our case law clearly established that a constitutional violation occurred. *See Tolan*, 572 U.S. at 656 (affording us the discretion to decide the order in which to address the qualified-immunity prongs). Next, we will determine whether we have jurisdiction to address the defendants' arguments that they are entitled to qualified immunity on these counts.

### 1. *Clearly Established*

Do the Nashes assert clearly established constitutional rights? Count II alleges that the defendants fabricated evidence in violation of the Fourteenth Amendment. "It was clearly established by 2006 that the Fourteenth Amendment's guarantee of due process is violated by the manufacture of false evidence in order to falsely formulate a pretense of probable cause." *Livers v. Schenck*, 700 F.3d 340, 354 (8th Cir. 2012) (cleaned up).

Count III alleges that the defendants' failure to investigate violated the Fourteenth Amendment. We have previously held that in the absence of exigent circumstances, an officer who intentionally or recklessly fails to sufficiently investigate an incident before arresting a suspect is not entitled to qualified immunity. *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 955–57 (8th Cir. 2001).

Count V alleges a Fourth, Fifth, and Fourteenth Amendment right of access to courts claim. In 2005, we recognized that "[t]he right of access to the courts is well-established." *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005).

Count VII alleges a claim under the First and Fourteenth Amendments for government interference with familial and marital relationships. However, "[n]either the Supreme Court nor this court has clearly held wrongful prosecution and incarceration of a family member violates a right to familial association." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006).

Based on controlling precedent, Counts II, III, and V allege clearly established constitutional rights as of 2008. But Count VII does not allege a constitutional right that was clearly established in 2008. Consequently, we reverse the district court's denial of qualified immunity on Count VII.

### 2. *Constitutional Violation*

Did the defendants' conduct violate the Nashes' clearly established constitutional rights as alleged in Counts II, III, and V? The district court concluded that the defendants' pleadings failed to contest the alleged violation of constitutional rights. The court stated in a footnote that

> in their opening memoranda in support of summary judgment [d]efendants fail[ed] to address, much less establish, their entitlement to judgment as a matter of law or qualified immunity on Counts II–VII of [p]laintiffs' Amended Complaint. Defendants' limited discussion of these claims in their reply briefs fails to overcome this deficiency, and so their Motions for Summary Judgment on Counts II–VII will be denied.

*Nash*, 2022 WL 3585606, at *9 n.20.

Seeking reversal of this denial of qualified immunity, the defendants argue that "the hair washing theory and what each official knew about it . . . is integral to

-15-

the other counts." Appellants' Br. at 41. But as already discussed, the hair washing theory involves a genuine dispute of material fact for the jury to resolve. *See supra* Part II.A.1. As a result, we dismiss the defendants' appeal as to Counts II, III, and V for lack of jurisdiction. *See Graham*, 933 F.3d at 1009 ("Because [the defendant's] arguments all rest on his contention that the district court erred in its determination that a genuine dispute of material fact exists . . . we lack jurisdiction over [the] appeal."); *Taylor*, 2 F.4th at 1127 ("[F]or us to reach [the defendant's] 'legal argument' that he responded reasonably and did not violate clearly established law, we would have to exceed our jurisdiction and cast aside the district court's factual findings, analyze the factual record, and resolve genuine factual disputes against the non-moving party. This we cannot do.").

### III. *Conclusion*

Accordingly, we affirm the denial of qualified immunity on Count I, reverse the denial of qualified immunity on Count VII, and dismiss the defendants' appeal on Counts II, III, and V for want of jurisdiction. We remand this case to the district court for further proceedings.

_____