**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF DONALD NASH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00495-SEP |
| | ) | |
| HENRY JAMES FOLSOM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

**INTRODUCTION**

In this complex, hotly contested civil rights action, Plaintiffs' counsel obtained an exceptional result. The jury's verdict of $32.8 million is among the largest verdicts ever awarded to a civil rights plaintiff in Missouri. In fact, based on our research, it may be the first jury verdict *ever* awarded in this Court to a plaintiff in a wrongful conviction suit under 42 U.S.C. § 1983.

The Court is abundantly familiar with the long road behind this important victory for Mr. Nash, who was wrongfully convicted of capital murder. The jury's verdict confirms that Mr. Nash should have never been arrested in the first place, much less convicted. That victory came only after five years of litigation, including a motion to dismiss, lengthy discovery, motions for summary judgment, a highly favorable interlocutory appeal, and a two-week jury trial. At each step, the legal and factual issues were complicated and frequently involved issues of first impression.

Few firms could have litigated this case with the same skill, expertise, resources, and experience as Plaintiffs' attorneys, who have successfully represented four men wrongfully convicted of murder. After representing Mr. Nash pro bono for nearly a decade to obtain his

1

freedom, counsel undertook this civil rights representation notwithstanding the very real possibility of receiving no compensation if they failed, at any point, to overcome the defendants' dispositive motions, to defeat qualified immunity on an interlocutory appeal, and to prevail in a high-risk trial after the central plaintiff, Mr. Nash, had passed away.

Given the exceptional result, the proposed lodestar is an appropriate measure of the time, effort, and expertise Plaintiffs' counsel dedicated to this case. The petition should be approved, and the Court should award attorney's fees of $2,681,187.50 and costs of $65,767.85.

## **ARGUMENT**

If a plaintiff "prevail[s]" in a lawsuit brought under § 1983, the Court may award "reasonable attorney's fees." 42 U.S.C. § 1988(b); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (internal quotation omitted). "Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.*

## I.      Plaintiffs[1] Are Prevailing Parties.

The Supreme Court has established a "generous formulation" to be a "prevailing party": plaintiffs simply need to "succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." *Id.* at 433. "A 'prevailing party' … is … one who 'successfully prosecutes the action,'" meaning a plaintiff "who has 'made a claim' against another and 'has successfully maintained it.'" *Lackey v. Stinnie*, 604 U.S. 192, 205 (2025) (quoting Black's Law Dictionary 1352 (rev. 4th ed. 1968)). As a result, "a plaintiff may qualify as a 'prevailing party' based on an award of nominal damages, or a final victory on a material even if not

---

[1]      This motion uses the term "Plaintiffs" as Mr. Nash passed away resulting in the substitution of his estate as the lead plaintiff, and Mrs. Nash is the personal representative of the estate.

predominant claim." *Id.* at 202 (internal citation omitted).

Plaintiffs inarguably qualify here. Plaintiffs prevailed against Defendant Henry James Folsom on two federal counts arising under § 1983, resulting in awards of $75,000 and $2,800,000. Plaintiffs also prevailed on state-law false arrest based on the same underlying facts, finding Mr. Nash's damages to be $25,000,000 and awarding $5,000,000 to Mrs. Nash for loss of consortium. *See Parada v. Anoka County*, 54 F.4th 1016, 1024 (8th Cir. 2022) (plaintiff was prevailing party because she "received a substantial compensatory-damages award of $30,000 on her false-imprisonment claim, which arose out of the 'same nucleus of operative fact' as her federal civil-rights claim"). Plaintiffs sought three "benefits" in bringing suit: (1) demonstrating the violation of Mr. Nash's civil rights in the events that led to his wrongful conviction for capital murder; (2) compensating Mr. Nash for personal injuries arising out of the stolen years of his life; and (3) compensating Mrs. Nash for her own suffering for the years she missed with her husband. Unfortunately, Mr. Nash's untimely death prevented him from personally witnessing the jury's vindication, but Plaintiffs are prevailing parties who successfully maintained multiple claims and achieved significant monetary benefits.

## II.    Plaintiffs' Lodestar Is Reasonable.

To calculate the attorney's fee award under § 1988, courts apply the "lodestar." *M.B. by Eggemeyer v. Tidball*, 18 F.4th 565, 567 (8th Cir. 2021) (affirming district court's award of $3,253,651.25 in attorney's fees and $132,907.56 in expenses). "The lodestar calculation is simple: it involves 'multiplying the number of hours reasonably expended' on the case 'by the reasonable hourly rates.'" *Id.* (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). "'[A] district court may rely on its own experience and knowledge of prevailing market rates' in its determination." *Missouri Primate Found. v. People for Ethical Treatment of Animals, Inc.*, No. 4:16-cv-02163-

SRC, 2025 WL 2970132, at *3 (E.D. Mo. Oct. 21, 2025) (quoting *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025)).

**A. Plaintiffs' Attorney's Fees Are Reasonable for a Landmark Civil Rights Verdict.**

This was not a run-of-the-mill civil rights case, much less under § 1983.  On the contrary, this is a first-of-its-kind jury verdict in the Eastern District of Missouri for a wrongfully convicted individual who brought constitutional claims under § 1983.  *See, e.g.*, *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (affirming district court's award of $4,997,914.55 in attorney's fees in case in which "no lawyers with primary offices in the Eastern District of New York have obtained a successful jury verdict in in a [Section] 1983 wrongful conviction suit, as [the attorneys] did here").  Here, the jury found damages of more than $32.8 million for civil-rights deprivations that resulted in wrongful incarceration of Mr. Nash for more than a decade.

In the relatively few cases around the country to feature similar results, courts have awarded sizeable attorney's fees—even nearly two decades ago:

- In 2007, a jury awarded Kevin Fox and his wife a total of $15.5 million after Kevin was wrongfully jailed for almost a year on suspicion of murdering his daughter. The court awarded $1.5 million in fees and costs. *See* Ex. A, Fifth Am. Compl., *Fox v. Former Will Cnty. State's Att'y*, No. 04-cv-07309 (N.D. Ill.), ECF No. 154; Ex. B, J. in a Civil Case, *Fox*, ECF No. 579; Ex. C, Order, *Fox*, ECF No. 701.

- In 2009, a jury awarded Shawn Drumgold $14 million after he spent fifteen years in prison for a murder he did not commit. The court awarded $1.6 million in fees and $51,000 in costs. Ex. D, Compl., *Drumgold v. Callahan*, No. 2004-cv-11193 (D. Mass.), ECF No. 1; Ex. E, Order, *Drumgold*, ECF No. 466.[2]

- In 2012, a jury awarded Thaddeus Jimenez $25 million after he wrongfully spent 16 years in prison for a murder he did not commit. The court awarded $1.7 million in attorney's fees and $142,000 in costs. Ex. F, Mem. Op. & Order, *Jimenez v. City of Chicago*, No. 09-cv-8081 (N.D. Ill.), ECF No. 404.

[cont'd]

---

[2] On appeal, this judgment was vacated on different grounds. *Drumgold v. Callahan*, 707 F.3d 28 (1st Cir. 2013). It appears to have settled on remand.

- In 2017, a jury awarded Sabein Burgess $15 million after he wrongfully spent 20 years in prison for the murder of his girlfriend. Ex. G, Mem. Op., *Burgess v. Balt. Police Dep't*, No. 15-cv-834 (D. Md.), ECF No. 491. The court awarded Burgess's attorneys more than $2.8 million in fees and $180,000 in costs. *Id.*

Notably, these cases involved fee requests based on prevailing rates from 10 to 20 years ago. Plaintiffs' requested award falls well in line with these results, especially adjusted for 2026.

**B. Plaintiffs' Rates Are Reasonable, Especially Given the Unique Nature of the Case.**

The lodestar is meant to "approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Missouri Primate Found.*, 2025 WL 2970132, at *2 (quoting *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 939 (8th Cir. 2021)) (approving rates of $790 and $880 per hour for straightforward civil contempt proceedings). The Court determines whether the proposed hourly rates are "reasonable in light of the prevailing rates in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation." *Lee ex rel. Lee v. Borders*, No. 4:09-cv-1977-TIA, 2014 WL 4811907, at *3 (E.D. Mo. Sept. 26, 2014).

The hours billed by Plaintiff's counsel are reasonable, as documented in detail in a declaration (Ex. H) that attaches comprehensive final billing records (Ex. H-1). The billing records list the attorney who performed legal work on the case, the date of that work, the number of hours spent, and the description of work, consistent with standard recording practices. Ex. H, ¶¶ 6-12; Ex. H-1 at pp. 2-76. This was a complex case that lasted five years, but the total number of hours (3,399.5) is consistent with a very reasonable—and efficient—expenditure of time over the lifespan of a case of this magnitude. *Cf. Restivo*, 846 F.3d at 591-92 (affirming fee award for more than 11,000 hours in a wrongful conviction action under § 1983). This efficiency, moreover, reflects the skill and expertise embedded in the hourly rates set forth below.

In submitting their timesheets, Plaintiffs' counsel have taken care to heed the Supreme Court's admonition that "[t]he applicant should exercise 'billing judgment' with respect to hours worked," *Hensley*, 461 U.S. at 437, and have taken time to make sure that they submitted appropriate, reasonable time entries, and not extraneous hours that would have been "excessive, redundant, or otherwise unnecessary" to the result in this case. *Id.* at 434. Given the complexity, duration, and contested nature of the case, and outstanding result, Plaintiffs' hours are reasonable.

As a result, Plaintiffs' attorneys should be awarded the following hours and hourly rates, based on the range, as increased during the representation from 2020 to present (*see* Ex. H-1 at pp. 80-81):

| Attorney | Graduation | Rate (Range) | Hours | Total |
|---|---|---|---|---|
| Weiss | 1968 | $900[3] | 1393.5 | $1,254,150.00 |
| Potts | 2011 | $525-$935 | 788.2 | $608,687.50 |
| Snodgrass | 1980 | $670-$840 | 718.3 | $520,878.50 |
| Guariglia | 2023 | $435-$640 | 398.1 | $237,217.50 |
| Houser | 2024 | $610 | 54.9 | $33,489.00 |
| Seidl | 2025 | $560 | 17.0 | $9,520.00 |
| Gatua | 2024 | $610 | 14.5 | $8,845.00 |
| Cooke | 2025 | $560 | 15.0 | $8,400.00 |
| | | | | **Total Fees: $2,681,187.50** |

1. **The *Hensley* Factors Support the Proposed Rates.**

The Supreme Court in *Hensley* instructed lower courts to consider twelve factors in deciding the reasonableness of a fee award. 461 U.S. at 430 n.3. Here, each factor either supports the requested fee award or is neutral.

***Time and Labor Required.*** After an engagement in 2020, this case was filed in 2021. The docket reflects the extensive effort Plaintiffs' counsel have expended over the past five years. This

---

[3]   Mr. Weiss's standard hourly rate increased from $860 to $1,440 throughout this litigation, which Plaintiffs adjusted downward to a flat rate of $900 for purposes of this fee request.  This results in a reduction of requested fees from $3,070,527 to $2,681,187.50.  *See* Ex. H-1 at 81.

6

includes defeating a motion to dismiss, conducting depositions, defeating motions for summary judgment filed by all defendants, prevailing in an interlocutory appeal that created valuable precedent for future cases, *Estate of Nash v. Folsom*, 92 F.4th 746 (8th Cir. 2024), preparing and responding to extensive pretrial filings, and an intense, two-week jury trial involving numerous witnesses, exhibits, and legal disputes.

*Novelty and Difficulty of Questions.* This case involved several important, novel, and difficult questions of fact and law, many of which arose in the midst of trial. To obtain a favorable verdict, Plaintiffs' counsel had to brief numerous complex issues, both here and in the Eighth Circuit.  This included substantive doctrine surrounding the federal claims for unlawful arrest and detention under the Fourth Amendment, fabrication of evidence, failure to investigate, and withholding evidence and the state law claims for false arrest, malicious prosecution, abuse of process, and loss of consortium; various immunities advanced by Defendants, such as qualified immunity, official immunity, witness immunity, and the public rights doctrine; and other structural issues involving judicial estoppel, res judicata, the statute of limitations, and the survival and abatement of claims. Factually, this case had a complex record spanning decades of investigation, prosecution, and post-conviction proceedings, which Plaintiffs' counsel took great pains to explain to the jury. Nothing about this case was easy.

*Skill Required.* For much the same reason, having attorneys with the qualifications of Plaintiffs' counsel was crucial for Plaintiffs' success in this case. Not only was the case incredibly complex, but Plaintiffs faced stiff opposition at every turn by the Missouri Attorney General's Office, which had two sets of counsel representing multiple defendants. From the perspective of any plaintiff's counsel, the case was particularly challenging in light of Mr. Nash's death.  As a result, the central plaintiff was unable to testify live before the jury to settle any lingering questions

7

jurors might have harbored regarding the merits of his claims, but also to explain the depth of his personal, largely intangible injuries, which is a significant obstacle in a non-wrongful-death case.

***Preclusion of Employment Due to Acceptance.*** Every hour Plaintiffs' counsel spent briefing, preparing, and trying this case was an hour spent not performing work that counsel could—and would—have billed to their firm's hourly-rate-paying clients. Instead, this case involved years of non-payment. Due to the zero-sum nature of time, Plaintiffs' counsel have made these trade-offs throughout the process of representing Plaintiffs in this action since 2020.

***Customary Fee.*** While Plaintiffs' counsel charge some of the highest rates in the St. Louis market, they do so for a reason: paying clients willingly pay those rates for their excellent representation. Plaintiffs benefited from this level of representation and would not have achieved the result they did without it. In short, Plaintiffs' counsel's rates are reasonable, given their skill, experience, and reputation.

***Fixed or Contingent.*** Plaintiffs' counsel took this case on contingency, very much risking that all the hours they dedicated to representing Plaintiffs could result in no revenue.

***Time Limitations.*** There were no relevant time limitations imposed on Plaintiffs' counsel.

***Amount Involved and Results Obtained.*** "[T]he most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Securing *any* favorable result in a § 1983 case premised on wrongful conviction is a major victory. But doing so while also winning the wrongfully convicted plaintiff a verdict of more than $32 million is remarkable. Plaintiff is unaware of any comparable civil rights verdict in the Eastern District of Missouri, and certainly not for a wrongful conviction action. This one-of-a-kind result alone justifies award. *See Restivo*, 846 F.3d at 590.

***Experience, Reputation, and Ability.*** Plaintiffs' counsel's experience, reputation, and

8

ability are at the top of the St. Louis market. Bryan Cave Leighton Paisner LLP ("BCLP") was the highest-ranked St. Louis-based firm in the AmLaw 100 in 2025 (of only two). BCLP is the highest St. Louis-based firm to appear in the 2026 Vault Law 100 rankings (again, of only two), and was the *only* St. Louis-based firm in the Vault 100 ranking for the four previous years. Similarly, Best Law Firms awarded BCLP 43 national rankings in 2026, the most of any firm in St. Louis. And the individual credentials of the attorneys on this case in the narrow category of wrongful convictions (see below) bear out the excellence of the representation Plaintiffs received.

*Undesirability of Case.* The constitutional bases for overturning Mr. Nash's conviction under habeas corpus law were different than the bases for the successful § 1983 claims in this case. Furthermore, overcoming qualified immunity for law enforcement officials is always a daunting challenge—yet Plaintiffs prevailed.

*Nature and Length of Client Relationship.* Plaintiffs' counsel began representing Mr. Nash in 2011, while he was incarcerated for capital murder—and long before there was any prospect of him bringing, much less winning, a § 1983 lawsuit. The same lawyers have continued to take time from their busy schedules to work tirelessly to correct an injustice.

*Awards in Similar Cases.* As described above, the award sought by Plaintiffs' here is comparable to every similar multimillion-dollar, wrongful conviction case, especially when adjusted for 2026 rates.

### 2. Hourly Rates in the Community Support Counsel's Rates.

Keeping the *Hensley* factors in the back of its mind, the Court begins its substantive calculations by determining whether Plaintiffs' proposed hourly rates are reasonable. *Brandon v. Bd. of. Educ. of City of St. Louis*, No. 4:22-cv-635-SRC, 2025 WL 3723823, at *19 (E.D. Mo. Dec. 23, 2025). Courts in this district have repeatedly approved fees for attorneys at large firms in the area that are at or very near their regular hourly rate. *Missouri Primate Found.*, 2025 WL 2970132,

9

at *2 (approving rates of $880 and $790 per hour for Polsinelli in routine civil contempt action); *see also Jones v. Monsanto Co.*, No. 19-0102-CV-W-BP, 2021 WL 2426126, at *11 (W.D. Mo. May 13, 2021) (approving class action settlement fee award in excess of $9 million after cross-checking to hourly rates of $750/hour and $800/hour because "this was not a routine or typical class action"). Once the court adjusts for additional increases in rates in recent years, the rates sought by Plaintiffs' counsel are reasonable for attorneys at the very top of the St. Louis market.

Plaintiffs' proposed rates are justified by reference to fees awarded in other cases to attorneys in the community. *Lee*, 2014 WL 4811907, at *3. Even before *Missouri Primate Foundation*, judges in this district had recognized the reasonableness of fees at significant hourly rates. *See Yates v. Symetra Life Ins. Co.*, No. 4:19-cv-154 RLW, 2022 WL 1618787 (E.D. Mo. May 23, 2022) ($700 rate for California-based ERISA litigator); *Axiom Prod. Admin., Inc. v. O'Brien*, No. 4:20-cv-01333-MTS, 2024 WL 1655389, at *5 (E.D. Mo. Apr. 17, 2024) ($695 rate for contractual dispute); *Reach Healthcare Found. v. SRZ Reach LTC*, No. 4:23-cv-228-RLW, 2024 WL 2862879, at *4 (E.D. Mo. June 6, 2024) ($635 for Lathrop GPM).

*Missouri Lawyers Weekly* most recently published its "Billing Rates" edition in 2023, which demonstrates a partial subset of rates for the top of the Missouri legal market, primarily focusing on smaller firms. *See* Ex. I, Billing Rates – November 2023, Missouri Lawyers Media (rates ranging from $650 to $1,125 in non-AmLaw 100 firms including Lathrop GPM and smaller firms). Based on market forces, hourly rates have continued to increase dramatically. In 2023, rates at the largest 100 firms (BCLP's peers) increased by an average of almost 9%.[4] In 2024, rates

---

[4] Roy Strom, *Top Law Firms' Revenue Rose 6% on Higher Rates, Wells Fargo Says*, Bloomberg Law (Jan. 30, 2024, 10:04 AM CST), http://news.bloomberglaw.com/business-and-practice/top-law-firms-revenue-rose-6-on-higher-rates-wells-fargo-says.

increased again by an average of 9.1% at 130 of the top firms in the nation.[5] And once again in 2025, rates within the AmLaw 100 increased by almost 9.5%,[6] a trend that has only continued into 2026, with 90% of AmLaw 200 firms targeting rate increases of at least 6-10% to start the year.[7] As a result, the $700 rate approved in 2022 would now be between $965 and $1,000 (after a 9% increase to $763 in 2023, a 9.1% increase to $831 in 2024, a 9.5% increase to $910 in 2025 and a 6-10% increase to $965-$1,000 in 2026).

The Court should also consider the fact that Plaintiffs' counsel deferred their compensation for years. "Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283 (1989). To account for this, "courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Id.* at 283-84 (1989). The Court should weigh in the delay factor here, where Plaintiffs' counsel waited for more than five years after filing this suit to receive payment (or none at all).

Furthermore, "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991). Here, the skill and experience of Plaintiffs' counsel in wrongful conviction cases set them apart from the vast majority of lawyers in the local market, justifying higher rates than in the average local civil rights case, which may concern statutory claims of discrimination and may not inquire

---

[5] David Thomas & Mike Scarcella, *More Lawyers Join the $3,000-an-Hour Club, as Other Firms Close In*, Reuters (Feb. 27, 2025 3:15 PM CST), https://www.reuters.com/legal/legalindustry/3000-an-hour-lawyer-isnt-unicorn-anymore-2025-02-27/.

[6] *Law Firm Rates Report* 2026, Thomson Reuters (Oct. 20, 2025), https://www.thomsonreuters.com/en-us/posts/legal/law-firm-rates-report-2026/.

[7] Dan Masopust, *Navigating the Cost-Rate Tightrope: What 2026 Holds for Big Law* (Nov. 21, 2025, 10:09 AM), https://www.law.com/pro/2025/11/21/navigating-the-cost-rate-tightrope-what-2026-holds-for-big-law/.

into qualified immunity at all. Rate differences from prior cases that cannot be accounted for by passage of time (as discussed above) are largely attributable to these differences in complexity, experience, skill, and prestige. The qualifications of Plaintiffs' counsel are summarized below, with biographies attached (Ex. H-2).

**Charles A. Weiss.** Mr. Weiss is a partner at BCLP who earned his J.D. from the University of Notre Dame in 1968. He is a Fellow in the American College of Trial Lawyers and the International Academy of Trial Lawyers, with more than 55 years' experience in complex litigation. Mr. Weiss is highly involved in, and respected by, the local and national legal communities. He served a three-year term on the ABA Board of Governors (2006-2009) and also served as President of the following legal organizations: Theodore McMillian Inn of Court (2022-2024), Legal Aid of Missouri Statewide, Inc. (2003-2004), the Missouri Bar (1996-1997), the Missouri Lawyers' Trust Account Foundation (1992), the Bar Association of Metropolitan St. Louis (1984-1985), and the St. Louis Bar Foundation (1983).

His legal and civic achievements through the years have also been recognized with numerous local and national awards:

- Freedom Award (Midwest Innocence Project, 2025)
- Distinguished Pro Bono Fellow (American College of Trial Lawyers, 2021)
- Lawyer of the Year (*Missouri Lawyers Weekly*, 2021)
- Director's Award (Missouri State Public Defender, 2017)
- Spurgeon Smith Award (Missouri Bar Foundation, 2015)
- William Weiss Award (St. Louis Bar Foundation, 2015)
- Walston Chubb Award (Legal Services, 2013)
- Rev. Michael D. McCafferty Award (Notre Dame Law School, 2013)
- Best Lawyer in St. Louis (*St. Louis Riverfront Times*, 2010)
- Paul H. Chapman Award (Foundation for Improvement of Justice, 2010)
- Spirit of Justice Award (St. Louis Bar Foundation, 2009)
- Pro Bono Publico Award (Missouri Bar, 2009)
- Citizen of Year Award (St. Louis Notre Dame Club, 2009)
- Distinguished Lawyer Award (Bar Association of Metropolitan St. Louis, 2008)
- Outstanding Lawyer Award (St. Louis Bar Foundation, 2006)
- Herbert Harley Award (American Judicature Society, 2006)

- President's Award (Bar Association of Metropolitan St. Louis, 2004)
- Distinguished Service Award (Legal Services of Eastern Missouri, 1998)
- Award of Merit (Missouri Bar, 1997)

Mr. Weiss has been active in successfully representing individuals convicted of crimes they did not commit. Besides Mr. Nash, Mr. Weiss has represented four other individuals in post-conviction proceedings who were convicted of murder and sentenced to life imprisonment without parole. He was successful in each case. In 2021, *Missouri Lawyers Weekly* named Mr. Weiss (and Mr. Potts) "Lawyer of the Year" for the exoneration of Mr. Nash.  Most recently, both Mr. Weiss and Mr. Potts were appointed as special prosecutors to try the first prosecution-led wrongful conviction case in St. Louis history.  In 2023, the *American Lawyer* named Mr. Weiss and Mr. Potts their national "Litigators of the Week" for that trial, which resulted in the exoneration of an individual after 28 years in prison for first-degree murder based on a finding of actual innocence.

**Jonathan B. Potts.** Mr. Potts is a partner at BCLP who earned his J.D. from the University of Virginia and French law degrees from Sorbonne Law School and Sciences Po Law School. Today, he represents clients in high-stakes lawsuits throughout the country and currently serves as National Coordinating Counsel for the NCAA's portfolio of sports injury litigation, including litigation regarding concussions and chronic traumatic encephalopathy (CTE).

Mr. Potts has tried a double-digit number of civil cases to verdict or judgment in both federal court, state court, and arbitral tribunals. Alongside Mr. Weiss, Mr. Potts has exonerated three men wrongfully convicted of murder after spending decades in prison.  Mr. Potts has been recognized with numerous local and national honors:

- Freedom Award (Midwest Innocence Project, 2025)
- "40 Under 40" (*St. Louis Business Journal*, 2023)
- "Rising Stars" (national) (Law360, 2023)
- "Litigator of the Week (*American Lawyer*, 2023)
- Paul H. Chapman Award (national) (Foundation for the Improvement of Justice, 2022)
- Lawyer of the Year (*Missouri Lawyers Weekly*, 2021)

13

**Associates/Fellows.**   Isabel Guariglia is fellow, dividing her time between BCLP's Business and Commercial Disputes Practice Group and the Midwest Innocence Project. She earned her J.D. from Washington University in St. Louis in 2023. Her work at the Midwest Innocence Project focuses on litigation and prevention of wrongful convictions. Ed Houser is an associate at BCLP. Mr. Houser graduated *summa cum laude* from Washington University School of Law in 2024 and served as a senior executive editor for the *Washington University Law Review*. Before joining the firm, Mr. Houser served as a law clerk to the Hon. Chad A. Readler on the Sixth Circuit. During law school, he interned for the Hon. Raymond W. Gruender and externed for the Hon. Stephen R. Clark and then-Missouri Solicitors General D. John Sauer and Joshua M. Divine.  The biographies of Steve Snodgass and Emily Seidl are set forth in Ex. H-2.

To conclude, Plaintiffs benefited in this case from having an exceptional team of attorneys and paralegals. The hourly rates charged by those attorneys are reasonable.

## C. Plaintiffs' Proposed Costs Are Reasonable.

In their five-year struggle to vindicate Mr. Nash's rights, his attorneys spent substantial sums of money on the costs of the case, including depositions, research, and a retained expert, totaling $58,067.85 in out-of-pocket costs. Plaintiffs may also recover paralegal fees at market rates. *Jenkins*, 491 U.S. at 288-89. For that, Plaintiffs seek an hourly rate of $200 for 38.5 hours of paralegal work ($7,700), *see* Ex. H-1 at 80, at for a total of $65,767.85 in non-attorney's-fee-related costs.

## III.    Alternatively, the Court Should Award an Upward Adjustment from Any Reduced Lodestar.

Even if the Court is inclined to disagree with any specific hours or rates, the Court should still award the requested amount as an upward adjustment. The Court is free "to adjust the fee upward or downward" based on "other considerations"—including the "important factor of 'results

14

obtained.'" *Hensley*, 461 U.S. at 434. When a plaintiff achieves "excellent results," the Court is supposed to make sure that their attorneys "recover a fully compensatory fee." *Id.* at 435. And when counsel achieves "exceptional success" for his client, "an enhanced award may be justified." *Id.* Thus, the Court is more than justified in treating any difference between a hypothetically reduced lodestar and Plaintiffs' requested fees as "an enhance[ment]" merited by the extraordinary result. In either case, the Court should award Plaintiffs the "fully compensatory fee" they seek.

**CONCLUSION**

The Court should award $2,681,187.50 in attorney's fees and costs of $65,767.85 in favor of Plaintiffs and against Defendant Henry James Folsom.[8]

Dated: March 27, 2026                    Respectfully submitted,

                                         **BRYAN CAVE LEIGHTON PAISNER LLP**

                                         /s/ Isabel Guariglia
                                         Charles A. Weiss, MO #20299
                                         caweiss@bclplaw.com
                                         Stephen R. Snodgrass, MO #29017
                                         srsnodgrass@bclplaw.com
                                         Jonathan Potts, MO #64091
                                         jonathan.potts@bclplaw.com
                                         Isabel Guariglia, MO #75586
                                         isabel.guariglia@bclplaw.com
                                         One Metropolitan Square
                                         211 N. Broadway, Suite 3600
                                         St. Louis, MO  63102-2750
                                         Telephone:  (314) 259-2000
                                         Facsimile:  (314) 552-8215

                                         *ATTORNEYS FOR PLAINTIFFS*

---

[8]    Plaintiffs will also file a supplement to this motion with respect to the fees for the completion of the work on this motion for attorney's fees, which is compensable under § 1988, but obviously is not yet fully briefed through opposition and reply.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 27, 2026, the foregoing was filed using the

Court's CM/ECF system, which will serve notice upon all counsel of record.


/s/ Isabel Guariglia